IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:14-CV-12-FL

| | |
|---|---|
| WILLIE EARL SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Willie Earl Smith ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 22, 25). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 2d Public D.E. dated 20 Aug. 2014). The motions have been fully briefed.[2] For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[2] Each party filed a memorandum in support of its motion (D.E. 22-1, 26).

## I. BACKGROUND

### A. Case History

Plaintiff filed applications for DIB and SSI on 22 October 2010 alleging a disability onset date of 1 October 2010. Transcript of Proceedings ("Tr.") 15. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 15. On 28 August 2012, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff and his wife testified. Tr. 28-62. The ALJ issued a decision denying plaintiff's claim on 1 October 2012. Tr. 15-22. Plaintiff timely requested review by the Appeals Council. Tr. 9-11. On 20 November 2012, the Appeals Council admitted additional evidence into the record (Tr. 624-34), but denied the request for review. Tr. 3-8. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 16 January 2014, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)). On 21 February 2014, the Appeals Council denied plaintiff's request to reopen the case based on additional evidence plaintiff submitted after the denial of review. Tr. 1-2.

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings ["Listings"] in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.* §§ 404.1523, 416.923.

### C. Findings of the ALJ

Plaintiff was 50 years old on the alleged onset date of disability and 52 years old on the date of the hearing. Tr. 21 ¶ 6. The ALJ found that he has a limited education, having completed tenth grade, and past relevant work as a tractor trailer truck driver. Tr. 21 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 17 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: cervical disc disease, diabetes mellitus, hypertension, headaches, and obesity. Tr. 17 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 17 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), which provide:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted

may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).[3] The ALJ included in the RFC the limitations of no balancing; no climbing of ladders, ropes, or scaffolds; and no exposure to hazards such as unprotected heights and moving machinery. Tr. 18 ¶ 5.

At step four, the ALJ found that plaintiff was unable to perform his past relevant work as a tractor trailer truck driver because it was at the medium exertional level. Tr. 21 ¶ 6. At step five, the ALJ "conclude[d] that the claimant's nonexertional limitations have little or no effect on the occupational base of unskilled light work." Tr. 22 ¶ 10. He reasoned:

> If the claimant had the [RFC] to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.11. However, [Soc. Sec. Ruling 85-15, 1985 WL 56857, at *6, 8 (1985)] indicates that postural limitations on climbing and balancing environmental restrictions on working around hazards do not ordinarily have a significant impact on the broad world of work at any exertional level.

Tr. 22 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 22 ¶ 11.

### D.     Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456

---

[3] *See also Dictionary of Occupational Titles* ("DOT"), app. C § IV, def. of "L–Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http:// www.oalj.dol.gov/libdot.htm (last visited 20 Jan. 2015). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

(4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir .1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1–2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff argues that the case should be remanded for the award of benefits or, alternatively, for a new hearing on the grounds that the ALJ erred in: (1) his RFC determination and (2) assessment of plaintiff's credibility. Each ground is examined in turn below.

## III. DISCUSSION

### A. ALJ's RFC Determination

Plaintiff argues that he lacks the RFC to perform light work on the principal grounds that his cervical impairment prevents him from performing the grasping required for unskilled light work, his unsteady balance presents him from standing for six hours in an eight-hour workday, and his limited education restricts him to simple, routine, repetitive tasks. He contends that the ALJ erred in finding that plaintiff is capable of light work notwithstanding these limitations. The court disagrees.

Medical evidence supporting plaintiff's allegation that his grip strength, balancing, and limited education are disabling is scant, if nonexistent. The ALJ's review of the relevant medical records demonstrates the paucity of supporting evidence:

> The record also shows that the claimant suffered a rib fracture in a motor vehicle accident in November 2000 but an x-ray of his cervical spine at that time showed no fracture and grossly normal vertebral bodies (Exhibits 1F and 3F). He complained of neck pain after another motor vehicle accident in October 2010,

but a CT scan of his cervical spine showed no acute injury with only moderate spondylosis at CS-6 and C6-7 and moderate spinal stenosis at CS-6. There was no bony tenderness of his thoracic or lumbar spines (Exhibit 10F). An MRI scan of his cervical spine in December 2010 showed multi-level degenerative disc disease with disc bulging at CS-6 and C6-7. However, Dr. Scot Reeg reported that his *gait was normal* with negative straight leg-raising tests, good hip ranges of motion, no sensory or motor deficits of his lower extremities, and *normal grip strengths*. The claimant was treated with physical therapy and steroid injections (Exhibits 15F and 16F). Dr. Reeg reported in February 2011 that the claimant complained of numbness and tingling in both arms and an MRI scan showed some myelomalacia developing at C4-5. However, he stated that the claimant was not "grossly impaired neurologically" (Exhibit 18F). In April 2011, he reported that the claimant still complained of arm symptoms but was not grossly myelopathic or with focal neurological deficits (Exhibit 20F). [Physician's assistant William A. Munn, PA-C, MHSA, BA] reported in May 2011 that the claimant complained of pain in his upper extremities but exhibited *good strength and normal movement of all extremities* with no focal neurological deficits (Exhibit 26F). However, because of persistent symptoms, the claimant underwent a cervical discectomy with fusion, anterior plating and screw fixation from C4 to C7 in October 2011.

Postoperatively, Dr. Reeg reported in November 2011 that the claimant was doing well overall, his incisions were well-healed, and his pain was much better. He displayed good strength of his deltoids, biceps and triceps as well as *good grip strength*, *good hand strength*, and good external rotator strength. Sensation and reflexes were intact in his upper extremities and x-rays showed no evidence of hardware failure or implant migration (Exhibit 23F). In March 2012, Mr. Munn reported that the claimant *moved all his extremities well* and had no focal neurological deficits (Exhibit 26F). Dr. Reeg reported that he had only mild neck pain with excellent strength in his arms and *no discernible weakness* (Exhibit 23F).

Tr. 19-20 ¶ 5 (emphasis added).

Plaintiff cites to a letter to his counsel, dated 14 May 2012, from Mr. Munn, who had been treating plaintiff since August 2010 at a multispecialty medical group. Tr. 604-06. In the letter, Mr. Munn opined that plaintiff was disabled. Tr. 605 ("I would consider him unemployable at any level."). As part of the basis for this opinion, Mr. Munn stated:

[Plaintiff] complains of radicular pain and numbness and tingling to both hands, fairly constant, really only goes away when he is asleep and is probably present then, but he is asleep. . . . He has a little bit of a slow gait and *a little bit* of an unsteady balance. He has *slight* weakness in grip.

> . . . .
>
> Serious injuries include the motor vehicle accident in which he either had a syncopal episode or ran into some obstruction. . . . [H]e flipped his 18-wheeler into a body of water and was submerged, essentially drowned and recovered. . . . He likely has anoxic injury. His mental capacity and ability to read, write and do computations are poor at best, likely at an illiterate level altogether.

Tr. 604-05 (emphasis added).

The ALJ did not accord Mr. Munn's opinion great weight. He explained:

> In a May 2012 letter, Mr. Munn reported that injuries from the claimant's motor vehicle accident would prevent him from ever being able to drive a tractor trailer successfully and that he considered the claimant unemployable at any level. However, Mr. Munn is not a physician or accepted medical source and his opinion is not consistent with his reports that the claimant moved all his extremities well with no focal neurological deficits and his characterizations of the claimant's hypertension as benign and his diabetes as uncomplicated. Accordingly, his opinion is not accorded great weight.

Tr. 21 ¶ 5. Plaintiff does not specifically challenge the ALJ's assessment of Mr. Munn's opinion. The court finds that it is supported by substantial evidence and based on proper legal standards. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); Soc. Sec. R. 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006).

As to plaintiff's educational level, he contends that the ALJ should have restricted him to simple, routine, repetitive tasks ("SRRTs") because of his limited education. SRRTs are a narrower subset than unskilled work. *See McClendon v. Astrue*, No. 1:1 0CV411, 2012 WL 13525, at *7 (M.D.N.C. 4 Jan. 2012), *rep. and recomm. adopted by* 2012 WL 1414327 (24 Apr. 2012). But the Regulations recognize that a limited education is generally consistent with the performance of unskilled work:

> Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3); *see also id.* §§ 404.1568(a), 416.968(a) (defining unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"). Moreover, the Regulations provide that "[p]ast work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education." 20 C.F.R. §§ 404.1564(a), 416.964(a). Plaintiff, of course, has past work experience as a tractor trailer truck driver, which is semi-skilled work. *See* Tr. 21 ¶ 6 (citing DOT No. 904.383-010). Thus, plaintiff has not demonstrated that his level of formal education dictated that the ALJ restrict him to SRRTs.

Moreover, as noted by the ALJ in his assessment of Mr. Munn's opinion, testing has not shown neurological abnormalities in the period since plaintiff completed his formal education, including after his accident in 2010. The ALJ summarized this evidence as follows: "[Plaintiff] has been seen on numerous occasions for complaints of headache but CT and MRI scans of his brain in 2007 and 2010 did not show any intracranial abnormalities and his neurological exams have consistently shown his cranial nerves intact with no focal deficits." Tr. 18 ¶ 5.

Plaintiff argues that his testimony shows that the ALJ's RFC determination was erroneous. As discussed below, however, the ALJ properly discounted plaintiff's testimony to the extent it is inconsistent with the RFC.

The court concludes that the ALJ's RFC determination is supported by substantial evidence and based on the proper legal standards. The court accordingly rejects plaintiff's challenge to it.

B.   **ALJ's Credibility Determination**

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig v. Chater*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *1 n. 1; 2 (2 July 1996). First, the ALJ must determine whether the claimant's medically documented impairments could cause his alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms), 416.929(c)(3) (same). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cv1742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, plaintiff testified to the effect that his impairments, including pain resulting from them, are disabling, preventing him from working on a regular and continuous basis. *See*, *e.g.*, Tr. 42-44, 47-49, 51-53; *see also* Soc. Sec. Ruling 96–8p, 1996 WL 374184, at *2 (2 July 1996) (defining "regular and continuous" as eight hours per day for five days a week or its equivalent). In assessing plaintiff's allegations, the ALJ made the step-one finding that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 20 ¶ 5. At the second step of the credibility assessment, the ALJ found that "claimant's statements

11
Case 4:14-cv-00012-FL   Document 28   Filed 01/20/15   Page 11 of 15

concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 20 ¶ 5.

Evidence cited by the ALJ underlying his RFC determination with which plaintiff's allegations are inconsistent includes his reports to his orthopedic surgeon, Dr. Reeg, on 29 November 2011 that his pain was "much better" (Tr. 576) and on 22 March 2012 that he had only "mild neck pain" (Tr. 622). Tr. 20 ¶ 5. The ALJ also cited numerous medical findings, many of which are noted above, indicating that plaintiff's impairments were not disabling.

The ALJ gave this further explanation of his credibility determination:

> The claimant admitted in May 2011 that he was exercising by walking and he testified at the hearing that he was able to do a little housework, sweep, go to church, go shopping, and visit friends (Exhibit 21F). He admitted at the hearing that he could lift 10 to 20 pounds and lift a gallon of milk.[4] The claimant's activities are not consistent with his allegations of debilitating symptoms.

Tr. 20 ¶ 5.

Plaintiff argues that the ALJ erred to the extent that he dismissed plaintiff's subjective complaints as inconsistent with the record because they are, in fact, consistent with the medical evidence. In support, plaintiff summarizes his testimony that he has continued to suffer pain and other symptoms after his surgery in October 2011. Plaintiff thereby appears to be inviting the court to reweigh the evidence before the ALJ. It is not the role of the court to do so, *see* Craig, 76 F.3d at 589, and the court declines plaintiff's invitation. Thus, this contention by plaintiff fails.

---

[4] Plaintiff testified:

> Q . . . . [H]ow much can you lift?
> A I could lift about — right now, I can only lift about maybe ten to 20 pounds without the neck and back hurting.
> Q Okay. All right. Can you lift a gallon of milk with one hand?
> A I, I can lift it, but I got to go ahead and sit it down quick before the hand release[s] it because of hurting so bad.

Tr. 53.

12

Case 4:14-cv-00012-FL   Document 28   Filed 01/20/15   Page 12 of 15

To the extent that plaintiff is contending that the ALJ improperly required objective evidence of pain, the ALJ did not. While he did rely, in part, on medical findings, he also relied on such evidence as plaintiff's own reports of his symptoms and activities, as indicated. *See id.* at 595 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges . . . .").

The court recognizes that the ALJ did not expressly discuss the testimony of plaintiff's wife (Tr. 55-62),[5] which provides some corroboration of portions of plaintiff's testimony. Plaintiff did not object to the ALJ's not doing so. In any event, the ALJ did acknowledge that she testified (*see* Tr. 15) and represents repeatedly that he considered all the evidence (*see* Tr. 15 ("After careful consideration of all the evidence . . . ."); 17 ("After careful consideration of the entire record . . . ."); 18 ¶ 5 ("After careful consideration of the entire record . . . ."), including specifically with respect to his credibility determination (Tr. 20 ¶ 5 ("After careful consideration of the evidence . . . .")). The same bases cited by the ALJ for discrediting plaintiff's allegations would appear to apply to plaintiff's wife's testimony. An ALJ is not, of course, required to discuss every piece of evidence. *See, e.g., Doyle v. Colvin*, No. 7:12–CV–326–FL, 2014 WL 269027, at *10 (E.D.N.C.), *mem. and recomm. adopted by* 2014 WL 269027, at *1 (23 Jan. 2014). The court concludes that any error by the ALJ in not discussing plaintiff's wife's testimony was harmless. *See, e.g., Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n.7, 7 (M.D.N.C. 14 Aug. 2013).

---

[5] The ALJ did not include in his decision a summary of the testimony of either plaintiff or his wife.

Plaintiff testified that he suffered itching, drowsiness, and weakness as side effects from the pain medications he was taking, the worst being itching. Tr. 36, 42-43, 51-52. Although the ALJ did not speak in terms of medication side effects—another concern not raised by plaintiff—he did address repeatedly in his findings the issues of neurological deficits and weakness, as indicated above. The ALJ did not address itching. Plaintiff points to no evidence of itching, and the court cannot find any, other than plaintiff's two sentences of testimony about it. *See* Tr. 43 ("And the main side effect is it itch[es]. It'll have me itching so bad.")). The court finds no error in the ALJ's assessment of plaintiff's testimony regarding medication side effects, but even if it were deemed erroneous, the error is harmless.

The ALJ did not discount entirely plaintiff's allegations, but included limitations in his RFC determination responsive to them. As the ALJ explained:

> The undersigned concludes . . . that the claimant's headaches, hypertension and diabetes make it dangerous for him to do any significant balancing; climbing of ladders, ropes or scaffolds; or work with exposure to hazards such as unprotected heights or moving machinery. However, with good motion and strength of his extremities and no neurological deficits, the undersigned concludes that the claimant retains the ability to sit, stand or walk 6 hours in an 8-hour workday and lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally, as required for light work.

Tr. 20 ¶ 5.

The court concludes that the ALJ's assessment of plaintiff's credibility is supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to it.

## IV. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court finds that the ALJ's decision is supported by substantial evidence and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 25)

for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 22) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 3 February 2015 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 20th day of January 2015.

_____
James E. Gates
United States Magistrate Judge

15
Case 4:14-cv-00012-FL   Document 28   Filed 01/20/15   Page 15 of 15